**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

*Attorneys for Co-Lead Plaintiffs and
Co-Lead Counsel for the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAU XIANG LEONG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPRICOR THERAPEUTICS, INC. and LINDA MARBÁN,<br><br>Defendants. | Case No. 3:25-cv-01815-GPC-AHG<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge: Gonzalo P. Curiel<br>Courtroom: 12A<br>Hearing Date: June 26, 2026, 1:30 PM |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ........................................................................... iii

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................... 2

III.  ARGUMENT ........................................................................................ 6

      A. Legal Standard ................................................................................ 6

      B. The Complaint Adequately Pleads Violations of Section 10(b) of the Exchange Act ................................................................................... 7

          1. Defendants Raise Factual Disputes, Not Pleading Issues ............ 8

          2. Plaintiffs Adequately Plead Actionable False and Misleading Statements ................................................................................... 9

              a.  Misleading statements about the BLA ................................. 10

              b.  Misleading statements about the San Diego Facility ............. 11

              c.  Defendants' misrepresentations are not immunized as opinions ........................................................................... 14

              d.  Defendants' misrepresentations were not puffery .................. 16

              e.  The PSLRA safe harbor does not apply ............................... 18

              f.  The alleged misrepresentations are not fraud-by-hindsight ... 19

          3. The Complaint Pleads a Strong Inference of Scienter ................. 20

C. The Complaint Adequately Pleads Liability Under Section 20(a) of the Exchange Act ...................................................................................25

IV.    CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*,
   756 F. Supp. 3d 852 (S.D. Cal. 2024) ........................................................ 11, 21

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) ............................................................ 23

*Aramic LLC v. Revance Therapeutics, Inc.*,
   No. 21-CV-09585-AMO,
   2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ...................................................... 23

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
   403 F. Supp. 3d 765 (N.D. Cal. 2019) ............................................................ 8, 9

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ...................................................................... 10, 11

*Bielousov v. GoPro, Inc.*,
   No. 16-CV-06654-CW,
   2017 WL 3168522 (N.D. Cal. July 26, 2017) ................................................... 18

*Butala v. Owlet, Inc.*,
   No. 2:21-CV-09016-FLA (JEMX),
   2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) .................................................... 23

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
   No. 3:21-CV-00762-WQH-NLS,
   2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .................................................. 11

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   No. 18-CV-04844-BLF,
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................................................. 13

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
   70 F.4th 668 (3d Cir. 2023) .............................................................................. 10

iii

*Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*,
  166 F.4th 805 (9th Cir. 2026)..................................................................21, 22

*Courter v. CytoDyn, Inc.*,
  788 F. Supp. 3d 1150 (W.D. Wash. 2025)...............................................*passim*

*Craig Frazier Design, Inc. v. Zimmerman Agency LLC*,
  No. C 10-1094 SBA,
  2010 WL 3790656 (N.D. Cal. Sep. 27, 2010)....................................................7

*Cullen v. RYVYL Inc.*,
  No. 3:23-CV-0185-GPC-SBC,
  2024 WL 898206 (S.D. Cal. Mar. 1, 2024).......................................................22

*E. Ohman J v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023).........................................................................20, 24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) .........................................................................................7

*Espy v. J2 Glob., Inc.*,
  99 F.4th 527 (9th Cir. 2024)..............................................................................22

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023)......................................................................*passim*

*Grossman v. Sin*,
  2:23-CV-09501-MRA-MAA,
  2025 WL 1330087 (C.D. Cal. Mar. 31, 2025) ...................................................8

*Homyk v. ChemoCentryx, Inc.*,
  No. 21-CV-03343-JST,
  2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)...........................................*passim*

*In re Acadia Pharms. Inc. Securities Litig.*,
  No. 18-CV-01647-AJB-BGS,
  2020 WL 2838686 (S.D. Cal. June 1, 2020).....................................................22

*In re Allstate Life Ins. Co. Litig.*,
  No. CV-09-8162-PCT-GMS,
  2012 WL 1900560 (D. Ariz. May 24, 2012).....................................................10

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021)............................................................................22

*In re Amgen Inc. Sec. Litig.*,
   No. CV072536PSGPLAX,
   2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)..........................................20, 21

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
   782 F. App'x 572 (9th Cir. 2019)..................................................................23

*In re Atossa Genetics Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017).......................................................................7, 15

*In re Bofi Holding, Inc. Sec. Litig.*,
   No. 3:15-CV-02324-GPC-KSC,
   2016 WL 5390533 (S.D. Cal. Sept. 27, 2016) ...........................................12, 13

*In re BioMarin Pharm. Inc. Sec. Litig.*,
   No. 3:20-CV-06719-WHO,
   2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ................................................*passim*

*In re Dermtech, Inc. Sec. Litig.*,
   No. 23-CV-1885-DMS-JLB,
   2025 WL 1618193 (S.D. Cal. June 5, 2025).....................................................8

*In re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Matsushita Elec. Indus. Co.*,
   No. MDL 765 PHX RCB,
   1991 WL 425379 (D. Ariz. Jan. 7, 1991).........................................................9

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF,
   2018 WL 1411129 (N.D. Cal. March 21, 2018) ..............................................12

*In re Fibrogen, Inc.*,
   No. 21-CV-02623-EMC,
   2022 WL 2793032 (N.D. Cal. July 15, 2022) .............................................21, 24

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)...........................................................................7

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005) ...................................................................18

*In re Juno Therapeutics, Inc.*,
  No. C16-1069RSM,
  2017 WL 2574009 (W.D. Wash. June 14, 2017)..............................................16

*In re Leapfrog Enter. Sec. Litig.*,
  237 F. Supp. 3d 943 (N.D. Cal. 2017) .............................................................10

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011).......................................................*passim*

*In re Obalon Therapeutics, Inc.*,
  No. 3:18-CV-0352-AJB-WVG,
  2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ....................................................9

*In re Pivotal Sec. Litig.*,
  No. 3:19-CV-03589-CRB,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) ...................................................22

*In re Qualcomm Inc. Sec. Litig.*,
  No. 17CV00121 JAH-WVG,
  2019 WL 1239301 (S.D. Cal. Mar. 18, 2019)...................................................24

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)................................................................*passim*

*In re QuantumScape Sec. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022) .............................................................14

*In re Read-Rite Corp.*,
  335 F.3d 843 (9th Cir. 2003)...........................................................................20

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)......................................................................23, 25

*In re Splunk Inc. Sec. Litig.*,
  592 F. Supp. 3d 919 (N.D. Cal. 2022) .............................................................16

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG

*In re SVB Fin. Grp. Sec. Litig.*,
No. 23-CV-01097-NW,
2025 WL 1676800 (N.D. Cal. June 13, 2025) ...................................................25

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...........................................................................9

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022) .....................................................18, 19

*Jun Shi v. Ampio Pharms., Inc.*,
No. 218CV07476RGKRAO,
2020 WL 5092910 (C.D. Cal. June 19, 2020) ..................................................23

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...........................................................................7, 8

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
743 F. Supp. 3d 1083 (D. Ariz. 2024) .................................................................8

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .........................................................................25

*Loc. 282 Pension Tr. Fund & Loc. 282 Annuity Tr. Fund Dist. No. 9 v.*
*Biomarin Pharm., Inc.*,
No. 23-15433,
2024 WL 637491 (9th Cir. Feb. 15, 2024) .........................................................9

*Markette v. XOMA Corp.*,
No. 15-CV-03425-HSG,
2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ................................................15

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................6, 7

*Mulligan v. Impax Lab'ys, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................*passim*

*Nguyen v. Radient Pharms. Corp.*,
No. 5:11-cv-00406-DOC (MLGx),
2011 WL 13141630 (C.D. Cal. Oct. 26, 2011) ................................................23

*Nguyen v. Endologix, Inc.,*
    962 F.3d 405 (9th Cir. 2020)......................................................................25

*No. 84 Employer–Teamster Joint Council Pension Tr. Fund v.*
*Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003).....................................................................25

*Nozak v. N. Dynasty Mins. Ltd.*,
    804 F. App'x 732 (9th Cir. 2020)..........................................................22, 23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................14, 16

*Osher v. JNI Corp.*,
    183 Fed. App'x 604 (9th Cir. 2006)...........................................................25

*Pampena v. Musk*,
    705 F. Supp. 3d 1018 (N.D. Cal. 2023) ...................................................22, 23

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)....................................................................17

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996).....................................................................19

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014).......................................................................24

*Roberts v. Zuora, Inc.*,
    No. 19-CV-03422-SI,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ..............................................12

*Rodriguez v. Gigamon Inc.*,
    325 F. Supp. 3d 1041 (N.D. Cal. 2018) ........................................................19

*Ronconi v. Larkin,*
    253 F.3d 423 (9th Cir. 2001).......................................................................25

*Salzman v. ImmunityBio, Inc.*,
    753 F. Supp. 3d 1050 (S.D. Cal. 2024)...........................................12, 13, 21, 22

*Sayce v. Forescout Techs., Inc.*,
No. 20-CV-00076-SI,
2021 WL 1146031 (N.D. Cal. Mar. 25, 2021) ...................................................... 13

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ................................................................. 11, 12, 20

*S. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ........................................................................ 20, 22

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ......................................................... 20, 25

*Sharenow v. Impac Mortg. Holdings, Inc.*,
385 Fed. App'x 714 (9th Cir. 2010) .................................................................... 25

*Strezsak v. Ardelyx Inc.*,
No. 21-CV-05868-HSG,
2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) ..................................... 15, 17, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................................................................................... 20, 23

*Todd v. STAAR Surgical Co.*,
No. CV–14–05263–MWF–RZ,
2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ............................... 19, 20, 22, 24

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ............................................................................... 18

*Turocy v. El Pollo Loco Holdings, Inc.*,
No. SACV151343DOCKESX,
2017 WL 3328543 (C.D. Cal. Aug. 4, 2017) ..................................................... 20

*United States v. Romm*,
455 F.3d 990 (9th Cir. 2006) ........................................................................... 7, 24

*Warshaw v. Xoma*,
74 F.3d 955 (9th Cir. 1996) ................................................................................ 10

ix

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018).............................................................................25

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)............................................................................19

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015).............................................................................21

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009).......................................................................13, 14

**Statutes & Regulations**

Fed. R. Civ. P. 12(b)(6) ........................................................................................7

Securities Exchange Act of 1934.......................................................................7, 25

x

Co-Lead Plaintiffs Maximilian Laserer and Moussa Yeroushalmi (collectively, "Plaintiffs") hereby oppose Defendants Capricor Therapeutics, Inc. ("Capricor" or the "Company") and Linda Marbán ("Marbán")'s motion to dismiss.[1]

## I.    INTRODUCTION

Who lied? Plaintiffs' Complaint, citing the official explanation from the United States Food and Drug Administration ("FDA"), pleads that Defendants misrepresented regulatory communications and concealed known manufacturing deficiencies. Defendants' Motion asserts that the FDA secretly flip-flopped. Ascertaining the truth requires discovery and cross-examination.

The Complaint pleads that Capricor and Marbán concealed (i) that the FDA consistently maintained that any Biologics License Application (the "BLA") for CAP-1002 should include data from the pivotal HOPE-3 trial, which Defendants wanted to exclude; and (ii) that the facility Defendants built to manufacture CAP-1002 (the "San Diego Facility") was riddled with significant, unremedied deficiencies. The allegations are corroborated by the official FDA Complete Response Letter ("CRL") rejecting the BLA, as well as confidential witnesses.

Unable to show pleading deficiencies, Defendants focus attention on *factual* disputes which are implausible, unsubstantiated, and contrary to well-pleaded Complaint allegations. Defendants argue that before the Class Period, the FDA reversed its demand for the HOPE-3 data, but then secretly reversed itself again months later. No evidence supports this narrative. The regulatory communications

---

[1] References to "¶" are to the numbered paragraphs of the Amended Complaint for Violations of the Federal Securities Laws ("Complaint"), ECF No. 38. References to "DM" are to Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF No. 43-1. Because there is only a single individual Defendant, Plaintiffs use the term "Defendants" herein to refer to Marbán in her individual capacity together with the Company for which she was acting at all relevant times.

1

between Capricor and the FDA (other than the CRL) remain private, and there was no advisory committee meeting or other proceeding in which either Capricor or the FDA gave sworn testimony.

Defendants' limited pleading-related arguments fare no better. Plaintiffs pled each misrepresentation and omission in detail and explained why each was false. ¶¶266-322. There is only a single individual Defendant who at all times was acting on behalf of the Company, so there can be no ambiguity about attribution of statements. ¶¶28-34. Nor do Defendants raise any serious scienter challenge. As well-pled factual allegations demonstrate, Defendants at all times had access to, and knowledge of, information contradicting their public statements, which involved Capricor's core operations. ¶¶323-44. Considered with Plaintiffs' other allegations of scienter—many of which Defendants concede—the inference of scienter is not just strong but overwhelming.

Because Defendants raise no pleading defects and instead raise factual disputes, their Motion should be denied in its entirety and the Parties directed to commence discovery without further delay.

## II.    STATEMENT OF FACTS

***Capricor and the BLA.*** Capricor is a small biotechnology company headed by Marbán. ¶¶2, 27-30, 35. Capricor aims to commercialize CAP-1002, a biologic intended to treat Duchenne muscular dystrophy ("DMD"). ¶36. In February 2018, the FDA granted Regenerative Medicine Advanced Therapy ("RMAT") designation to CAP-1002, which allowed for increased meeting opportunities with the FDA and early interactions to discuss any potential issues. ¶¶117-18. CAP-1002 was originally intended to treat muscular upper limb problems in DMD patients, but Capricor submitted the drug as a treatment for DMD-associated cardiomyopathy, not musculoskeletal deficiencies. ¶¶8, 207-14. In 2024, the FDA agreed to accept the BLA submission on a rolling basis. ¶¶173-79.

***FDA Standards.*** By statute, the FDA cannot license a biologic unless the

2

sponsor demonstrates that it is safe, pure, and effective. ¶¶58-59. Proof of efficacy generally requires data from two adequate and well-controlled clinical trials. ¶¶60-62. For serious diseases with unmet needs, the FDA can consider one adequate and well-controlled clinical trial coupled with qualifying confirmatory evidence, but only if the FDA determines that the combined data clearly demonstrates efficacy. ¶¶63-64. Occasionally, the comparison between open-label results and natural history data is accepted as confirmatory evidence. ¶65. Natural history data is external data collected about the patient population. ¶¶64-69.

***The HOPE Trials.*** From 2019 through 2021, as part of CAP-1002's development, Capricor conducted a Phase II clinical trial, HOPE-2, a double-blind placebo-controlled trial, and an Open-Label Extension ("OLE") for HOPE-2, an uncontrolled trial under which all participants knowingly received CAP-1002. ¶¶119-40. The primary endpoint of HOPE-2 was musculoskeletal, having nothing to do with cardiomyopathy. After the trial was completed, Capricor added scores of secondary and exploratory endpoints, including 26 *post hoc* analyses of cardiac MRIs. ¶263. The FDA determined that these 50 secondary and exploratory endpoints "were not prespecified for hypothesis testing," were not properly statistically adjusted, and were subject to Type 1 errors (false positives). *Id.*

Both HOPE-2 and HOPE-2 OLE were compromised in their execution as well as their design. Capricor halted HOPE-2 mid-trial to assess a severe adverse event, and when it resumed, slashed the patient population and trial duration to save money. ¶¶119-31, 332. In May 2020, Capricor reported topline data showing that HOPE-2 failed to show statistically significant improvement in the originally-specified primary efficacy endpoint or key pre-specified cardiac and respiratory secondary endpoints, though it did show statistically significant improvement in a later-specified version of the upper-limb test. ¶129. More than a year later, Capricor reported *post hoc* analyses that boosted the statistical significance of the primary musculoskeletal endpoint and exploratory cardiac endpoints. ¶130. HOPE-2 OLE

3

lacked any control arm and, like all open-label studies, was subject to investigator and participant bias. ¶¶132-40, 333. In January 2022, Capricor began preparations for its pivotal HOPE-3 Phase III clinical trial. ¶141. HOPE-3 was a much larger, randomized, double-blind, placebo-controlled study. ¶¶143-51.

***The FDA Consistently Told Capricor to Include HOPE-3 Data in its BLA.*** Through CAP-1002's RMAT designation, Capricor had frequent meetings and written communications with the FDA. ¶152. Capricor had at least 10 formal meetings with the FDA and numerous informal meetings, teleconferences, and written communications where the FDA gave Defendants guidance. ¶153. The FDA consistently told Defendants that, because of the limitations of the HOPE-2 and HOPE-2 OLE trials, any BLA would require evidence from a Phase III trial – *i.e.*, HOPE-3. ¶¶154-67, 324-29.

***Capricor Secretly Defies the FDA.*** In 2024, while HOPE-3 was still finishing enrollment, Capricor decided that it wanted to submit its BLA without waiting for HOPE-3 to be completed and its data read out. Capricor scheduled a pre-BLA meeting to discuss the contents of the BLA and form of submission. ¶¶168-72. In its August 2024 pre-BLA meeting, Capricor presented HOPE-2 cardiac data and the comparison between HOPE-2 OLE results and DMD natural history. ¶¶172-79. But the FDA declined to change its position that HOPE-3 data was needed. ¶¶169-79. Instead, the FDA agreed to allow Capricor to submit its BLA on a rolling basis so data could be submitted as it was received. ¶¶173-79.

Against the FDA's guidance, Defendants decided to exclude the HOPE-3 data from the BLA because it was not available at the time Defendants wanted to have the BLA reviewed. ¶¶207-22. Instead of candidly admitting their defiance, Defendants pretended that the FDA acceded to their approach of submitting the BLA based only on exploratory HOPE-2 data and HOPE-2 OLE results compared to natural history. Defendants told investors that "[t]his approach is the result of multiple in-depth meetings with the FDA" discussing HOPE-2 and HOPE-2 OLE

4

(¶269), that it would "derisk our path forward" (¶273), that the "confirmatory [HOPE-3 data] is not necessary" (¶275), and that its deficient BLA submission was "[b]ased on FDA feedback" (¶284). As the Class Period progressed, the misrepresentations became more extreme. On March 19, 2025, Defendants told investors that "Capricor's ongoing HOPE-3 Phase 3 study…has not been requested by the FDA for this application" (¶290), and on May 5, 2025 asserted that the "FDA has acknowledged that the ongoing HOPE-3 Phase 3 trial…is not a part of Capricor's BLA for full approval of [CAP-1002]" (¶303). Defendants also falsely assured investors that Capricor and the FDA remained aligned, stating "[o]ur continued dialogue with the FDA remains on track" (¶319), that "all regulatory milestones have proceeded as expected" (¶321), and that they "continue to work closely with the FDA and remain encouraged by the progress of our review" (¶321).

*Capricor Hides Manufacturing Problems.* Defendants were equally duplicitous about manufacturing problems. Capricor hid from investors known problems in the San Diego Facility it constructed to produce CAP-1002. ¶¶146-47, 165, 180. Two well-informed Confidential Witnesses ("CWs") cited in the Complaint confirmed that the San Diego Facility was riddled with chemistry, manufacturing, and control ("CMC") deficiencies before and throughout the Class Period. ¶¶187-206. CW1 detailed several deficiencies that would require months, if not years, to resolve, including using filter material that was not compliant with current Good Manufacturing Practices ("cGMP") (¶192), having flawed airflow in the cleanroom that risked contamination (¶¶193-95), and having mold in a CAP-1002 drug sample (¶196). These issues were discussed at regular meetings attended by executives, and were directly conveyed by CW1 to Marbán. ¶¶189-91, 199-200.

CW2 affirmed that all-hands meetings occurred where Marbán and other executives would be made aware of CMC deficiencies. ¶¶201-02. CW2 corroborated that the CMC deficiencies continued throughout the Class Period, including the existence of serious flow problems risking contamination (¶203), a

5

flawed layout (*id*.), and weak data controls (¶204). CW2 also described a mock inspection Capricor conducted in January 2025 as "chaos." ¶206.

In May 2025, FDA did a standard pre-license inspection of the San Diego facility, and issued a Form 483 to Capricor documenting numerous CMC deficiencies. ¶¶223-37. Many were the same as identified by the CWs. *Id*. Again, instead of being truthful about the problems, Defendants minimized them as "routine" and too insignificant to "require[] material changes" to process or facility. ¶312. Marbán told investors the inspection "reflects the strength of our manufacturing capabilities and positions us well" (¶313), and a press release falsely characterized the inspection as "successful[]" (¶316).

***The Truth Emerges.*** On June 20, 2025, the risks Defendants concealed started to materialize when news outlets reported that the FDA had cancelled an advisory committee meeting with Capricor because the FDA was skeptical of CAP-1002's efficacy after Defendants had submitted a BLA lacking the HOPE-3 efficacy data that the FDA consistently told Defendants was needed. ¶¶253-54, 346-49. In response, Capricor's stock plunged 35.7%. ¶350.

On July 11, 2025, the risks concealed by Class Period misrepresentations fully materialized when Capricor disclosed receipt of the CRL requiring an additional adequate and well-controlled clinical trial with a "concurrent control group," just as the FDA had said all along in requesting HOPE-3 data be part of the BLA, and stating that Capricor still needed to address CMC deficiencies at the San Diego Facility. ¶¶255, 261, 351. That same day, Marbán conceded that the FDA had expressed concerns about the HOPE-2 data "***literally for years***." ¶¶256-59. In response to this news, Capricor's stock price sank another 33%. ¶¶351-55.

## III.   ARGUMENT

### A.   Legal Standard

As the Supreme Court instructs, securities fraud plaintiffs "need only allege enough facts to state a claim to relief that is plausible on its face." *Matrixx*

6

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 n.12 (2011). On a Rule 12(b)(6) motion, the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).[2] A Rule 12(b)(6) motion "test[s] the sufficiency of the complaint, not . . . its merits." *Craig Frazier Design, Inc. v. Zimmerman Agency LLC*, 2010 WL 3790656, at *6 (N.D. Cal. Sep. 27, 2010). The court "is not sitting as a trier of fact." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *Id*.

**B.    The Complaint Adequately Pleads Violations of Section 10(b) of the Exchange Act**

The Complaint adequately alleges that Defendants violated Section 10(b) of the Exchange Act by making misrepresentations to investors that were at least reckless. *See* ¶¶265-344. To state a claim under Section 10(b), Plaintiffs must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011). "Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Here, Defendants challenge falsity and scienter.[3] Both are adequately pled.

---

[2] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added.

[3] Recognizing that Plaintiffs have adequately pled loss causation, ¶¶14, 253-59, 345-55, Defendants do not challenge that element in their opening brief. They have waived any ability to do so on reply. *See generally* DM; *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

7

### 1.  Defendants Raise Factual Disputes, Not Pleading Issues

Defendants' main argument is *not* that Plaintiffs failed to sufficiently plead material misrepresentations or scienter, but rather that the Court should credit their counter-narrative, which rests wholly on the say-so of Defendants themselves, over well-pleaded Complaint allegations. According to Defendants, in non-public communications that neither Plaintiffs nor the Court can verify, the FDA secretly told Defendants that the FDA no longer demanded HOPE-3 data be part of the BLA. Then, they say, the FDA flip-flopped less than a year later in another secret decision. *Compare* DM 5-9, 11-15, 24 *with* ¶¶152-79, 207-22, 253-69.

Defendants' factual disputes have no place in a motion to dismiss and will be thoroughly disproved at trial. The Ninth Circuit recently reaffirmed "the prohibition against resolving factual disputes at the pleading stage." *See Khoja*, 899 F.3d at 1003. So have District Courts across the Ninth Circuit. *See, e.g., In re Dermtech, Inc. Sec. Litig.*, 2025 WL 1618193, at *6 (S.D. Cal. June 5, 2025) (rejecting factual dispute as "premature" and inappropriate at the pleading stage); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1099 (D. Ariz. 2024) ("resolving a factual dispute at the pleading stage is improper and premature"); *Grossman v. Sin*, 2025 WL 1330087, at *19 (C.D. Cal. Mar. 31, 2025) (by arguing that plaintiffs' claims were not factually supported, defendants "impermissibly attempt to raise factual disputes and ignore the well-pleaded allegations in the" complaint).

Defendants' "heavy reliance" on *thirty-eight* extrinsic documents for the truth of contested matters asserted therein only confirms that their arguments "implicate factual disputes that are not properly resolved at the motion to dismiss stage."[4] *See Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765,

---

[4] As outlined in the accompanying Response in Opposition to Defendants' Request for Judicial Notice ("Opp. to RJN"), Defendants improperly cite to documents

777 (N.D. Cal. 2019); *see also* Plaintiffs' Opp. to RJN. Notably, the proffered documents are not from the FDA and do not establish that the FDA withdrew its demand for the HOPE-3 data. *See, e.g.,* ECF Nos. 43-14, 43-15, 43-16, 43-17. Instead, Defendants ask the Court to improperly infer such a reversal occurred because Marbán said so. But the truth of her assertion, and the FDA's contradictory official account, is reserved for later proceedings. "The time for comparing evidence is after discovery, during summary judgment, or at trial—not now." *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *4 (S.D. Cal. Sept. 25, 2019).

Defendants' authority does not hold otherwise, and only addresses the general proposition that a plaintiff must plead contemporaneous falsity. *Loc. 282 Pension Tr. Fund & Loc. 282 Annuity Tr. Fund Dist. No. 9 v. Biomarin Pharm., Inc.*, 2024 WL 637491, at *1-2 (9th Cir. Feb. 15, 2024) (plaintiff did not plead facts showing contemporaneous falsity); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085-86 (9th Cir. 2002) (same). The Complaint easily does this by showing that the FDA had maintained its demand for HOPE-3 data and that there were known CMC deficiencies at the time Defendants made contrary statements to investors. Thus, neither *Biomarin* nor *Vantive* has anything to do with this case.

### 2. Plaintiffs Adequately Plead Actionable False and Misleading Statements

For each statement or omission, the Complaint alleges who made it, when, where, and how it was disseminated to investors, and why Plaintiffs contend it was false and/or misleading when made. ¶¶265-322. Such details satisfy the

---

outside of the Complaint, and these documents cannot be considered for the truth of the matters asserted unless the motion is converted into one for summary judgment. Should that occur, Plaintiffs will require substantial discovery about the subjects of these materials, including the FDA's communications with Defendants and internal communications about the San Diego Facility. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Matsushita Elec. Indus. Co.*, 1991 WL 425379, at *8 (D. Ariz. Jan. 7, 1991) ("The Ninth Circuit provides that parties shall have time for any necessary discovery after a motion to dismiss is converted").

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG

particularity requirements of the PSLRA and Rule 9(b). *In re Leapfrog Enter. Sec. Litig.*, 237 F. Supp. 3d 943, 950 (N.D. Cal. 2017).

### a.     Misleading statements about the BLA

Throughout the Class Period, Defendants told investors that the FDA had agreed to its approach of filing the BLA without HOPE-3 data, and did not request the HOPE-3 data be included in the BLA. In fact, the FDA specifically requested that data, and excluding it from the BLA directly contradicted FDA guidance. ¶¶271-72, 284, 286, 290, 321. Defendants' "representations are best read as a misstatement of the basic facts regarding [Capricor's] ongoing involvement with the FDA, and thus the likelihood of [the BLA's] approval." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809 (C.D. Cal. 2011); *see also Courter v. CytoDyn, Inc.*, 788 F. Supp. 3d 1150, 1168 (W.D. Wash. 2025) (publicly mischaracterizing FDA feedback was materially misleading); *Warshaw v. Xoma*, 74 F.3d 955, 958 (9th Cir. 1996) (similar).

Defendants also misleadingly characterized other aspects of their regulatory communications. For example, they touted the supposed strength of data discussed with the FDA while omitting that the FDA indicated so many doubts about their submissions that it sent Capricor ***50 information requests*** about the BLA and its deficient data. ¶¶222, 266-87, 290-311, 316-22.[5] Further, Defendants omitted the San Diego Facility's known CMC deficiencies, which also increased the risk of the BLA's rejection. ¶¶292-96, 316-22. Such omissions are actionable because "once defendants chose to tout the [BLA and its approval process], they were bound to

---

[5] Defendants' challenge to their June 11, 2025 statement to Oppenheimer (¶314), DM 18 n.5, fails for another reason as well. Because the statement was specifically attributed to Defendants, they are the "maker." *See In re Allstate Life Ins. Co. Litig.*, 2012 WL 1900560, at *4 (D. Ariz. May 24, 2012) (*Janus* allows indirect liability where statements are attributed to defendants); *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 688-89 (3d Cir. 2023) (statement in analyst report attributed to defendant where he was "identif[ied] as the speaker").

do so in a manner that wouldn't mislead investors[.]" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008). Specifically, once Defendants chose to discuss FDA approval, they were required to disclose FDA concerns and CMC deficiencies that threatened that approval. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707-08 (9th Cir. 2016) (once defendants chose to discuss FDA approval, they were required to disclose FDA concerns that threatened that approval); *Courter*, 788 F. Supp. 3d at 1161–62 (collecting cases) (defendants' statements about their BLA submission were misleading because they omitted that the BLA did not include data which the FDA told defendants would be critical to include); *Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*, 756 F. Supp. 3d 852, 870–74 (S.D. Cal. 2024) (failure to disclose that the FDA would pay special attention to disappointing subgroup data was an actionable omission); *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *11 (N.D. Cal. Feb. 23, 2023) (statements about FDA approval actionable because they omitted FDA concerns); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2022 WL 4491093, at *10 (S.D. Cal. Sept. 27, 2022) (failure to disclose disappointing trial data "rendered [d]efendants' positive statements regarding" study results "materially misleading"); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *9 (N.D. Cal. Jan. 6, 2022) (omitting FDA concerns from statements about FDA approval process were actionable omissions).

Thus, at bottom, Defendants' claims rest on factual disputes about whether the FDA expressed serious concerns about the data submitted in the BLA, requested the HOPE-3 data, or whether the known CMC deficiencies were remediated. None of these can be resolved at the pleading stage.

### b.    Misleading statements about the San Diego Facility

Defendants consistently misrepresented the San Diego Facility in their positive statements about the Facility to investors. First, they omitted known CMC deficiencies. ¶¶288, 292-93, 300, 312-14, 316-17, 319, 321. "[O]nce defendants

11

choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman*, 840 F.3d at 705-06; *Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050, 1061-65 (S.D. Cal. 2024) (failure to disclose cGMP deficiencies actionable).

After the FDA identified CMC deficiencies in the Form 483, Defendants falsely asserted that remediation required no "material changes to the cGMP process or facility[,]" when the opposite was true and significant deficiencies remained unremedied. ¶¶300, 312-14, 316-17, 321. Marbán admitted as much after the Class Period. ¶¶260-61. Misrepresenting cGMP problems identified by the FDA and their remediation status is actionable. *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 960-61 (N.D. Cal. 2014).

Two CW accounts corroborate the CMC deficiencies Defendants concealed from investors. ¶¶188-206. CW accounts that contradict or undermine a defendant's public statements are sufficient to plead falsity. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *Mulligan*, 36 F. Supp. 3d at 962-63; *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *17-18 (N.D. Cal. March 21, 2018); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *10 (N.D. Cal. Apr. 28, 2020). Plaintiffs substantiate these allegations by "identif[ying] each confidential witness by title and job description, and in quite a few instances includ[ing] the name of the individual to whom they reported". *ImmunityBio*, 753 F. Supp. 3d at 1068 (S.D. Cal. 2024) (citing *In re Bofi Holding, Inc. Sec. Litig.*, 2016 WL 5390533, at *10 (S.D. Cal. Sept. 27, 2016)); ¶¶188, 201. Moreover, CW1 outlined "routine meetings" that Marbán and other executives attended where deficiencies would have been discussed (¶189), and confirmed that deficiencies remained through CW1's tenure (¶¶190-200). CW1 also confirmed that CW1 told Marbán directly about these deficiencies. ¶190. CW2 corroborated CW1's account of an "all-hands" meeting Marbán attended that discussed the deficiencies, and that

12

they persisted throughout the Class Period. ¶¶202-06.

Defendants' attempts to explain away the damning CW accounts fail. DM 18-21, 23. Defendants argue that the CWs left before the pre-license inspection, DM 19, but this "view[s] the inquiry too narrowly. Plaintiffs use the confidential witnesses in an attempt to demonstrate the pervasive and systemic nature of" CMC deficiencies at the San Diego Facility. *Mulligan*, 36 F. Supp. 3d at 963. CW1's account of rampant deficiencies right before the Class Period corroborates CW2's account during the Class Period, and therefore, both must be credited at this stage. *See Bofi Holding*, 2016 WL 5390533, at *10-11, n.5. Defendants' authority agrees that pre-class period accounts should be credited where, as here, they are accompanied by facts showing the concealed conditions persisted through the time of misrepresentations (contemporaneous falsity). *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019). Nor does it matter that the CWs did not report directly to Marbán, DM 23. The Ninth Circuit has rejected any such requirement. *Quality Sys.*, 865 F.3d at 1144 (crediting low-level employees who provided fewer details than here and had no contact with defendants). Thus, CW1's and CW2's first-hand accounts, which are consistent with the FDA's findings in the Form 483 and CRL, must be credited. *See* ¶¶188-206, 216, 225.[6]

Defendants' arguments that "the Form 483 observations were preliminary" and "Capricor still had months to fix those issues," DM 17, 23, strain the bounds of good faith advocacy. Aside from the fact that this Court has rejected similar unsubstantiated arguments, *see ImmunityBio*, 753 F. Supp. 3d at 1064; *cf. Zucco*

---

[6] Defendants' reliance on *Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031 (N.D. Cal. Mar. 25, 2021) is misplaced, as *Sayce* never said that CWs could not establish falsity, and the Ninth Circuit subsequently reversed dismissal, holding that the CWs—most of whom were lower-level employees—were sufficiently pled to establish scienter. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 768-72, 779 (9th Cir. 2023).

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (Defendants' authority which dealt with conclusory CW allegations and not defendants' ability to cure known defects), Marbán admitted that several Form 483 observations remained unremedied by the time the FDA reviewed the BLA. ¶¶260-61.

### c. Defendants' misrepresentations are not immunized as opinions

Defendants' misleading statements are actionable even if opinions. DM 15-18, 20-21. As an initial matter, most express facts. Only one statement even contains the words "believe" or "think." *See* ¶269; *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 739 (N.D. Cal. 2022) (statements with embedded false facts without opinion-qualifying language such as "I think" or "I believe" were not opinion statements).[7]

Many "express[] certainty about a thing" or occurrence and thus are not "opinions." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 176 (2015); *see, e.g.*, ¶267 ("The BLA filing will be based on existing cardiac data from the Phase 2 HOPE-2 and HOPE-2 Open Label Extension (OLE) trials compared to natural history data"); ¶297 ("We have clinically and statistically significant data. The data stands on its own….In terms of HOPE-3, what they have told us is that they are not considering HOPE-3 for this biologics license application"); ¶300 ("FDA stated that no significant deficiencies have been identified"); ¶303 ("Notably, FDA has acknowledged that the ongoing HOPE-3 Phase 3 trial…is not a part of Capricor's BLA for full approval of deramiocel"); ¶312 ("The Company has submitted its responses to the FDA, none of which required material changes to the cGMP process or facility"); *see also* ¶316.

Further, Plaintiffs do not bring claims based upon language Defendants identify as "opinions" in the relevant statements, but rather on omission or affirmative misrepresentation of material fact. *See, e.g.*, ¶¶267, 269, 293, 297, 300,

---

[7] Including those words does not transform factual statements into opinions or give an executive license to mislead investors. *See Mulligan*, 36 F. Supp. 3d at 966-67.

312, 317, 321; *Homyk*, 2023 WL 3579440, at *13 (rejecting "opinion" classification where plaintiffs challenge factual portions of a statement). Whether or not the statements contain "opinions," they remain actionable because they embedded false statements of fact and omitted known, material adverse information. *Forescout*, 63 F.4th at 779 (opinion actionable even if defendants honestly believed a merger would close because defendants omitted known, material adverse information that cast doubt on whether the merger would close); *see also Courter*, 788 F. Supp. 3d at 1170.

Here, Defendants' misrepresentations contain embedded statements of fact about FDA communications, while omitting the FDA's demand for the HOPE-3 data. ¶¶267, 273, 286, 300, 309; *Courter*, 788 F. Supp. 3d at 1170 (statements mischaracterizing FDA communications are actionable even if opinions); *cf. Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *6 (N.D. Cal. Mar. 18, 2024) (opinion statements only found nonactionable because they did not embed factual misrepresentations or omit material facts); *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4-5 (N.D. Cal. Sept. 28, 2017) (same). Likewise, misstatements about the BLA's status and the San Diego Facility did not fairly align with information in Defendants' possession about the need for the HOPE-3 data or the significant CMC deficiencies at the San Diego Facility, and are also actionable. ¶¶267, 269, 271-73, 286, 293, 297, 300, 306, 309, 316-17, 319, 321; *Courter*, 788 F. Supp. 3d at 1170; *Atossa*, 868 F.3d at 802 (omitted FDA concerns did not align with defendants' statements); *Mulligan*, 36 F. Supp. 3d at 967 (statements about manufacturing improvements not opinions because little was actually done to rectify issues highlighted by a Form 483); *see also Forescout*, 63 F.4th at 779.

Cross-examination will determine whether Defendants actually believed their statements, *see* DM 15-17, 20-21, but that is of no consequence. The statements are actionable because they did not align with the factual information Defendants possessed and were bound to fairly portray to investors when speaking

15

about those subjects. *See Homyk*, 2023 WL 3579440, at *15; *Omnicare,* 575 U.S. at 188-89; *In re Juno Therapeutics, Inc.*, 2017 WL 2574009, at *5 (W.D. Wash. June 14, 2017); *Mulligan*, 36 F. Supp. 3d at 967.

### d.    Defendants' misrepresentations were not puffery

Nor can Defendants escape liability by mischaracterizing their Class Period statements as puffery. DM 10-11, 13-16. "When determining whether statements amount[] only to puffery, the [C]ourt must analyze the context in which the statements were made." *Mulligan*, 36 F. Supp. 3d at 966. Here, Defendants concretely tethered their statements to specific regulatory communications, a specific BLA, and cGMP compliance of a specific facility. *See* ¶¶277, 292, 306, 309, 317, 319, 321.[8] None of the claims of falsity hinge on the specific words that Defendants improperly isolate and find objectionable. *Id.*

Moreover, puffery does not apply where, as here, "statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143; *see also In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 941 (N.D. Cal. 2022) ("optimistic statements are *not* inactionable puffery and may form a basis for a securities fraud claim where the plaintiff pleads allegations raising the inference that the defendants were aware of facts that rendered the optimistic statements false or misleading"). That is especially true when discussing FDA approval, because investors have no choice but to look to the Company to understand the status of regulatory communications. Therefore, courts routinely hold that puffery does not apply to statements, as here, that "provide concrete descriptions of the past and present in the form of factual statements about" the FDA approval process. *Homyk*, 2023 WL 3579440, at *16; *see also Courter*, 788 F. Supp. 3d at 1170 ("statements…are not mere puffery where [defendant] was aware of facts rendering the optimistic statements false or

---

[8] Defendants' Motion only identifies these seven statements as puffery. DM 16 n.3.

16

misleading."); *BioMarin*, 2022 WL 164299, at *12 (statements about defendants' relationship with the FDA were not "empty opinions similar to puffery" where "they were undergirded by factual assertions"). Here, "Defendants' statements concerning the FDA cross the line from exaggeration and corporate optimism into outright misstatement of historical fact" and are not puffery. *MannKind*, 835 F. Supp. 2d at 811, 816 (descriptions of FDA communications affecting FDA approval were not puffery); *see also Mulligan*, 36 F. Supp. 3d at 967-68 (descriptions of manufacturing facilities and remediation of cGMP deficiencies were not puffery); *supra* at Section III(B)(2)(a).

Defendants' reliance on *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.* is misplaced. There, the Ninth Circuit held that statements of optimism were inactionable because the omitted information was known to the market. 759 F.3d 1051, 1060 (9th Cir. 2014). The Ninth Circuit expressly indicated a different result would apply if, like here, the company made statements about FDA approval despite knowing contradictory facts. *Id*. Thus, to the extent applicable at all, *Intuitive Surgical* supports Plaintiffs' position.

Finally, Defendants' assertion that "optimistic factual statements" could not have misled a reasonable investor, DM 10-11, 13, is contrary to both fact and law. As the Complaint alleges, investors relied on Defendants to provide accurate information about regulatory communications that were otherwise non-public, and analysts closely tracked the information that management provided. ¶6. Regardless, "determining whether a given statement is material entails fact-intensive assessments that are more properly left to the jury." *Mulligan*, 36 F. Supp. 3d at 966. *Strezsak* does not hold otherwise, and in fact acknowledges that Defendants "would have a duty to disclose the FDA's feedback if it contradicted Defendants' statements" or presented unique risks – the very situation here. 2024 WL 1160900,

at *6.[9]

### e.    The PSLRA safe harbor does not apply

The PSLRA safe harbor does not apply to statements about present or historical fact, or even mixed statements that contain both forward-looking and current or historical components. *See, e.g.*, *Quality Sys.*, 865 F.3d at 1148. That is true even if some element relates to a future goal or event. *See, e.g.*, *id.*; *Forescout*, 63 F.4th at 774.

Defendants wrongly claim safe harbor immunity for historical statements discussing prior interactions with the FDA. DM 17; ¶300 ("[d]uring the meeting, FDA stated"), ¶306 ("We continue to have active dialogue with the FDA"), ¶309 ("There has also been an emphasis and written guidance from FDA"), ¶316 ("following successful FDA Pre-License Inspection"), ¶319 ("Our continued dialogue with the FDA"). Indeed, all of "[t]he problematic statements made by Defendants refer to *past* interactions with the [FDA], and do not merely express optimism or confidence about FDA approval." *MannKind*, 835 F. Supp. 2d at 816-17.[10] Moreover, context matters. Most of the statements use the term "remain[] on track," which necessarily presupposes that Capricor had previously been on track

---

[9] *Tongue v. Sanofi* is further afield, as the Second Circuit found that defendants (unlike here) accurately described regulatory communications with the FDA, and the allegedly omitted information was already fully disclosed. 816 F.3d 199, 211-12 (2d Cir. 2016). Defendants' claim that the FDA's demand for the HOPE-3 data was already known to investors, DM 13, **is the exact opposite** of what Marbán actually said during the Class Period: that the FDA no longer wanted that data for the BLA. ¶¶275, 290, 297, 303. Moreover, any truth-on-the-market defense belongs at trial, especially where, as here, Defendants cannot establish the omitted information was publicly transmitted "sufficient to effectively counterbalance any misleading impression created by [Defendants'] one-sided representations." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1036 (S.D. Cal. 2005).

[10] Paradoxically, Defendants also seek to characterize these same statements as opinions, DM 15-18, but a statement of opinion is a present statement, not forward-looking, and is not protected by the safe harbor. *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *4-5 (N.D. Cal. July 26, 2017).

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG

and "contains representations of past and present facts." *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 869 n.8 (W.D. Wash. 2022) (distinguishing *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021)); *see also Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1051 (N.D. Cal. 2018) (collecting cases).[11]

Further, even if some statements might contain forward-looking elements, they would categorically be outside the safe harbor because they were not accompanied by meaningful cautionary language that "precise[ly]" and "directly address" the alleged misrepresentations so much that the language "discredit[s] the [allegedly misleading statement] so obviously that the risk of real deception drops to nil." *BioMarin*, 2022 WL 164299, at *7 (citing *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996)). The cautionary language Defendants cite is "boilerplate language concerning the risks inherent in that process, and do[es] not address misstatements concerning their past communications with the FDA." *MannKind*, 835 F. Supp. 2d at 817; *BioMarin*, 2022 WL 164299, at *8 (meaningful cautionary language must be tailored to the specific statement and directly address the alleged misrepresentations); *see* ECF Nos. 43-17 at 5, 43-19 at 30-58, 43-26 at 3-4, 43-27 at 7, 43-28 at 4, 43-29 at 4-5.

### f.    The alleged misrepresentations are not fraud-by-hindsight

"Fraud is almost always detected after the fact[.]" *MannKind*, 835 F. Supp. 2d at 809-10 (finding statements "that the FDA had accepted, or blessed, or agreed to the Defendants' [ ] methodology—which are shown to be false by a later revelation demonstrating that the FDA had not, in fact, done any such thing—do not constitute 'fraud-by-hindsight'"). That does not render statements made earlier misrepresenting then-existing facts "fraud-by-hindsight." *Id*.; DM 10-13, 17, 20. That falsity is revealed months after the statements does not immunize them or render them true when made. *Mulligan*, 36 F. Supp. 3d at 961; *Todd v. STAAR*

---

[11] ¶300 is misleading because it discussed *prior* interactions with the FDA. *Supra*.

19

*Surgical Co.*, 2016 WL 6699284, at \*9 (C.D. Cal. Apr. 12, 2016). Plaintiffs allege that the statements were misleading *when made* because Defendants then knew that the FDA wanted HOPE-3 data in the BLA and that the San Diego Facility had CMC deficiencies. ¶¶168-237, 265-322; *see Courter*, 788 F. Supp. 3d at 1163 (fraud-by-hindsight inapplicable when statements pled as false when made); *cf. In re Read-Rite Corp.*, 335 F.3d 843, 847-48 (9th Cir. 2003) (post-class period events did not suggest Class Period statements were false when made).

### 3.    The Complaint Pleads a Strong Inference of Scienter

Scienter is "a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 937 (9th Cir. 2023); *Schueneman*, 840 F.3d at 705. A strong inference "need not be irrefutable…or even the most plausible," and no "smoking-gun" is required. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). The test is simply whether a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. Here, Plaintiffs allege overwhelming facts that, viewed holistically, establish a strong inference of scienter.

***Defendants had access to and actual knowledge of contradictory information, as confirmed by the FDA and CWs.*** That Defendants had access to, and notice of, the concealed information "may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information." *S. Ferry LP v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008); *see also Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at \*16-17 (C.D. Cal. Aug. 4, 2017) (scienter pleaded where defendants had access to contradictory information); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1134 (N.D. Cal. 2017) (similar). Plaintiffs "need only plead a strong inference that [Defendants] had access to the [contradictory information] and were therefore put on notice[.]" *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at \*9 (C.D. Cal.

20

Aug. 4, 2014) ("*Amgen II*").

The Complaint does just that, alleging that Marbán had access to and received contradictory information in specific regulatory proceedings, and in her knowledge of unremedied problems at the San Diego Facility. ¶¶152-237, 324-29. As Marbán herself confirmed, Defendants were directly told by the FDA of concerns with HOPE-2 and HOPE-2 OLE data, as well as the FDA's desire to see HOPE-3 data. *Id*.; ¶¶330-34, 340. That Defendants had "access to the true facts from their meetings and various other communications with the FDA" establishes their scienter. *MannKind*, 835 F. Supp. 2d at 814; *In re Fibrogen, Inc.*, 2022 WL 2793032, at *23 (N.D. Cal. July 15, 2022) (touting information defendants knew, by its nature, must be inaccurate, established scienter); *Alger*, 756 F. Supp. 3d at 876 (scienter established when executive had access to meetings with FDA); *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 610 (4th Cir. 2015) (strong inference that defendants "misled investors by failing to disclose critical information received from the FDA…while releasing less damaging information that they knew was incomplete").

Defendants also attended meetings where the San Diego Facility's problems were discussed, and CW1 directly informed Marbán of CMC deficiencies. ¶¶190, 200, 202, 327-29. This first-hand knowledge of concealed information establishes scienter. *See Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*, 166 F.4th 805, 833-34 (9th Cir. 2026) (attending meetings where problems would have been discussed bolstered scienter); *ImmunityBio*, 753 F. Supp. 3d at 1067 (knowledge of manufacturing deficiencies established scienter); *Mulligan*, 36 F. Supp. 3d at 970 (access to Form 483s bolstered scienter).[12]

---

[12] As outlined in Section III(B)(2)(b), Plaintiffs adequately plead the CWs. Plaintiffs need not "specify the exact details of the conversation" between Marbán and CW1. *Amgen II*, 2014 WL 12585809, at *12. Any further challenge to the credibility of the CWs is premature at the pleading stage. *See ImmunityBio*, 753 F. Supp. 3d at 1068.

***Core Operations.*** The core operations inference also supports scienter, because CAP-1002 was Capricor's primary asset and its only drug to reach the clinical development stage. ¶¶342-43. The Ninth Circuit has routinely held that no more is required if "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *S. Ferry LP*, 542 F.3d at 786; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021); *Funko*, 166 F.4th at 832-34. Here, "[a]s the President and CEO of a small company with no drugs on the market, it is implausible that [Marbán] would not have been aware of the" FDA's repeated demand for HOPE-3 data or the San Diego Facility's CMC deficiencies, both of which threatened the BLA upon which the future of the Company hinged. *Homyk*, 2023 WL 3579440, at *18 (core operations applied for small drug company with no drugs on the market); *see also ImmunityBio*, 753 F. Supp. 3d at 1067 (citing *Todd*, 2016 WL 6699284, at *13) (similar); *Cullen v. RYVYL Inc.*, 2024 WL 898206, at *17 (S.D. Cal. Mar. 1, 2024) (similar); *BioMarin*, 2022 WL 164299, at *14 (similar); *In re Acadia Pharms. Inc. Securities Litig.*, 2020 WL 2838686, at *8 (S.D. Cal. June 1, 2020) (similar); *Mulligan*, 36 F. Supp. 3d at 969-70 (similar).[13]

Finally, Defendants argue that even if Marbán knew the contradictory information, scienter cannot be established unless she subjectively believed that the BLA would fail. DM 25. They are wrong. Believing you can get away with a risk is never an excuse for hiding it from investors. *See Pampena v. Musk*, 705 F. Supp.

---

[13] Defendants' cited cases are inapposite. *See Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) (core operations unavailable because "Plaintiffs have not provided detailed and specific allegations about management's exposure to factual information within the company"); *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539-40 (9th Cir. 2024) (similar); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *16-18 (N.D. Cal. July 21, 2020) (similar). Here, by contrast, Plaintiffs plead specific facts showing that Defendants had access to contradictory information. *Supra* at 20-21.

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG

3d 1018, 1049 (N.D. Cal. 2023) (scienter could be established regardless of subjective belief if defendant intentionally or recklessly omitted risks); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025-26 (C.D. Cal. 2008) (similar). *Aramic LLC v. Revance Therapeutics, Inc.*, cited by Defendants, does not hold otherwise but merely determined that scienter was not shown where a defendant made statements about new drug approval, not facility capability, and no specific contemporaneous facts were alleged to show that the defendant knew or ignored that a facility's deficiencies imperiled approval. 2024 WL 1354503, at *13 (N.D. Cal. Apr. 2, 2024). The situation here is the opposite: Defendants knew that their BLA submission was contrary to FDA requests but told investors otherwise, and made specific statements about the San Diego Facility and its cGMP compliance, which were contrary to what they were told internally. ¶¶152-237, 266-322.

***Capricor needed to raise capital to survive.*** Though not required, *see Tellabs*, 551 U.S. at 325, Defendants' "desire to raise company financing, combined with the 'red flags' of a company's financial condition, is sufficient to plead scienter." *Butala v. Owlet, Inc.*, 2024 WL 3648141, at *6 (C.D. Cal. Aug. 5, 2024) (quoting *Nguyen v. Radient Pharms. Corp.*, 2011 WL 13141630, at *6 (C.D. Cal. Oct. 26, 2011)); *Homyk*, 2023 WL 3579440, at *19 (motive to "keep the company afloat" was sufficient, in combination with other factors, to establish scienter); *see also MannKind*, 835 F. Supp. 2d at 813; ¶¶238-52; 335-39. The need for capital to survive differs fundamentally from the general desire for corporate success found in Defendants' cases. *See Nozak*, 804 F. App'x at 734 (general motive to attract investment insufficient to establish scienter); *In re Arrowhead Pharms., Inc. Sec. Litig.*, 782 F. App'x 572, 575 (9th Cir. 2019) (similar); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (desire to obtain financing can support scienter, but cannot establish scienter alone); *Jun Shi v. Ampio Pharms., Inc.*, 2020 WL 5092910, at *5 (C.D. Cal. June 19, 2020) (similar).

***Defendants concede Plaintiffs' additional scienter grounds.*** Recognizing

23

the strength of Plaintiffs' additional scienter allegations, Defendants chose not to respond, thereby conceding several allegations. *See Romm*, 455 F.3d at 997. For example, Defendants held themselves out as knowledgeable about the BLA, their FDA interactions, and the San Diego Facility in conference calls and in response to analysts' questions. ¶¶340-41. As the Ninth Circuit has repeatedly recognized, doing so supports scienter because it establishes they either had such knowledge or were deliberately reckless in so speaking without informing themselves. *See, e.g., NVIDIA*, 81 F.4th at 939-40, 942; *Forescout*, 63 F.4th at 773; *Quality Sys.*, 865 F.3d at 1145; *Reese v. Malone*, 747 F.3d 557, 571-72, 576-77 (9th Cir. 2014). Further, that Marbán issued her statement in direct response to questions from analysts and investors bolsters her scienter. ¶¶275, 288, 297; *In re Fibrogen, Inc.*, 2022 WL 2793032, at *23 (N.D. Cal. July 15, 2022); *In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019). Marbán's more than two decades worth of experience also establishes that she was deliberately reckless in disregarding adverse facts contradicting her public statements. ¶¶330-34, 344; *Homyk*, 2023 WL 3579440, at *19 (defendant's experience in the field of drug development meant that he "understood the obvious risk that omission of adverse facts would mislead investors"); *Todd*, 2016 WL 6699284, at *13 (similar).

***Defendants offer no plausible competing inference.*** Defendants offer no plausible competing inference to their scienter ***that can be drawn from the facts before the Court***. Instead, they largely suggest that the FDA secretly reversed course, an implausible assertion that is unsubstantiated, asserts factual information not before the Court, and will be proved false in discovery and at trial. The only other assertion—that Defendants genuinely believed their statements and would not pursue an approach doomed to fail, DM 22-23—"attacks a straw man." *BioMarin*, 2022 WL 164299, at *14 (rejecting the argument). "[H]ere, the allegations are not that the defendants were *convinced* the FDA would deny approval, it is that they withheld important *warning signs* from the market."

24

*BioMarin*, 2022 WL 164299, at *14 (emphasis in original).[14]

Defendants also argue that their scienter is negated by a lack of insider sales, DM 22, but because Plaintiffs do "not rely on allegations of an improper financial motive to demonstrate scienter, nor [do Plaintiffs] reference stock sales," Marbán's trading has no bearing on scienter. *Shenwick*, 282 F. Supp. 3d at 1149 (citing *Sharenow v. Impac Mortg. Holdings, Inc.*, 385 Fed. App'x 714, 717 n.2 (9th Cir. 2010) and *No. 84 Employer–Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003)) (distinguishing *Rigel*, 697 F.3d at 884, which relied on financial motive for scienter). Defendants' cited cases do not align with the facts alleged. *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) involved stock purchases, which were not made here. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037-38 (9th Cir. 2002) merely held that small stock sales did not establish financial motive.

### C. The Complaint Adequately Pleads Liability Under Section 20(a) of the Exchange Act

Because the Complaint sufficiently pleads claims under Section 10(b) of the Exchange Act, and Defendants contest this claim only as to the underlying primary violation, *see* DM 25, Plaintiffs' Section 20(a) claim must be sustained. *See In re SVB Fin. Grp. Sec. Litig.*, 2025 WL 1676800, at *14 (N.D. Cal. June 13, 2025).

## IV. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss should be denied in its entirety. In the alternative, Plaintiffs respectfully request leave to amend. *See Osher v. JNI Corp.*, 183 Fed. App'x 604, 605 (9th Cir. 2006).

---

[14] *Nguyen v. Endologix, Inc.* does not address the factual situation here. There, the alleged misrepresentations involved the possibility or impossibility of FDA approval. 962 F.3d 405, 408 (9th Cir. 2020). Here, Plaintiffs allege that Defendants concealed known risks, and did so deliberately. *Ronconi v. Larkin* involved no facts (unlike here) showing contemporaneous falsity, and the Ninth Circuit has since clarified the standard under which scienter was analyzed. 253 F.3d 423, 434 (9th Cir. 2001), *abrogated by Forescout*, 63 F.4th at 766.

25

Dated: April 27, 2026

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek

Joshua B. Silverman (*pro hac vice*)
Christopher P.T. Tourek (*pro hac vice*)
Genc Arifi (*pro hac vice*)
10 S. LaSalle St., Ste. 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
jsilverman@pomlaw.com
ctourek@pomlaw.com
garifi@pomlaw.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Devyn R. Glass
(*pro hac vice* application forthcoming)
515 South Flower Street
18th and 19th Floors
Los Angeles, CA 90071
Tel: (213) 985-7290
aapton@zlk.com
dglass@zlk.com

*Attorneys for Co-Lead Plaintiffs and Co-Lead Counsel for the Class*

**PORTNOY LAW FIRM**
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming*)*
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Moussa Yeroushalmi*

26

**CERTIFICATE OF SERVICE**

I, Christopher P.T. Tourek, declare:

I am employed in Chicago, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 10 South LaSalle Street, Suite 3505, Chicago, Illinois 60603. On April 27, 2026, I electronically filed Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

I declare under penalty of perjury that the above is true and correct. Executed on April 27, 2026, at Chicago, Illinois.

*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, Case No. 3:25-cv-01815-GPC-AHG